[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married in Stockholm, Sweden, on March 28, 1981. The defendant resided CT Page 9856 continuously in this state for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction.
This is the only marriage for both parties. They lived together from 1976 until their separation in April 1997. There is one minor child who is issue of this marriage, Christine, who was born July 4, 1988.
I. Procedural History
The plaintiff filed this action for marriage dissolution on May 7, 1999; the defendant filed her cross-complaint on June 8, 1999. Through initial pleadings, the plaintiff, who resided in Europe, submitted himself to the jurisdiction of this court.
The plaintiff withdrew his complaint on April 24, 2001. Thereafter, he sent the defendant unsolicited correspondence wherein he asked her to withdraw or alter her complaint. He threatened financial retaliation if she pursued the dissolution action.[1]
Unsuccessful, the plaintiff sought to delay the ultimate trial. He cancelled several pretrial depositions, eventually requesting continuances and protective orders. After this court denied those requests, the plaintiff remained uncooperative, failing to attend depositions. On the eve of trial, rather than comply with a mandatory trial management order, the plaintiff sought yet another continuance. As a sanction for the plaintiff's repeated violations of court orders, this court limited the plaintiff's testimony.
During the initial stages of this action, the plaintiff voluntarily paid the defendant $9,000 per week. In 2001 he reduced those payments. Pursuant to the defendant's pendente lite motion for alimony and child support, in July 2001 the trial court, Brennan, J., ordered resumption of the $9,000 monthly payment. That court further specified that the payments were not taxable income for the defendant.
At the time of trial, the arrearage was $30,000.[2] The defendant supplemented those payments with funds transferred from joint family savings and checking accounts.
I. Facts of the Case
The plaintiff is a fifty-two year old insurance executive. In 1973 he received a master's degree in economics from the Stockholm School of Economics. A London resident at the time of the trial, with the exception of an asthma condition the plaintiff was in good health. CT Page 9857
During the marriage, the plaintiff's initial employment was with Scandia, a Swedish corporation. Throughout his career with Scandia he has worked in a variety of international locations. The defendant supported each of those early moves. Eventually, the corporation transferred the plaintiff to its New York City offices. The family moved to Westport where they remained for thirteen years.
Unfortunately, in 1996 the plaintiff lost his position during a corporate re-structuring. Although they were given an option, the parties chose not to return to Sweden. After a lengthy term of unemployment, in 1997 the plaintiff secured a temporary position with Zurich Insurance in Switzerland. After much discussion, the defendant refused to accompany her husband overseas.
When he initially accepted the position at Zurich Insurance, the plaintiff believed that his position was guaranteed for eighteen months. Unfortunately, soon thereafter the corporation terminated the plaintiff's primary sponsor. Thereafter, the plaintiff's position at Zurich changed. The plaintiff left the company in 1998, eventually securing a position with the Sorema Corporation of Paris, France. Although the plaintiff thought he had a three-year position, that company was sold. Unemployed, the plaintiff diligently sought new employment. He eventually found employment with Alliance Global Risk of Munich, Germany. At the time of trial, he was an executive vice-president in that organization. His net monthly salary was approximately $10,000.[3]
Throughout his career, the plaintiff has worked in the field of commercial re-insurance; his current position is no different. Although he maintains an apartment in Paris, the plaintiff's current position requires that he spend a great deal of time in London. Although the plaintiff is not guaranteed employment after October 2003, he is not seeking a new position. Indeed, there is no evidence that any such position is available.
The defendant is a fifty-year-old homemaker. A high school graduate, she last worked in Sweden as a research laboratory technician in Sweden. She is a citizen of Sweden; in this country she is a registered alien.[4]
She suffers from manic depression, a condition currently under control through regular doses of lithium.
Although articulate and multi-lingual, the defendant has no marketable job skills. During this marriage, she never worked outside the home. The parties had always agreed that the defendant would remain home and "service" her family. Her role was to facilitate the functioning of other family members. CT Page 9858
During the marriage, the defendant received outpatient treatment for a bi-polar disorder. In 1992 she suffered from acute manic-depression. As a result she spent several weeks as an inpatient at the Silver Hills facility in New Canaan. Through medication, primarily lithium, that condition is under control.
Unfortunately the defendant has not reached her potential. Personal frailty, marital turmoil and the stress related to the present litigation resulted in a clear, albeit temporary, mental decline. At one point during the lengthy pre-trial period, the defendant could not remain in the same room as the plaintiff. She was at risk for suicide.[5]
The current prognosis is mixed. Eventually, she will benefit emotional from permanent marriage dissolution. During the past several years, her judgment and insight have improved. However, she cannot function well under stress. She will probably remain an unskilled worker.
This court must address the cause for this marital breakdown. There was a traditional division of labor. The plaintiff provided all the family income. The defendant maintained the family home. Because of the plaintiff's employment, the family residence changed often. The defendant, always supportive of her husband, helped facilitate each transition including that to the United States.[6]
When they lived together as a family, the plaintiff was a faithful husband. But this couple separated in April 1997 when the plaintiff, through financial necessity, accepted a position in Zurich. The defendant, believing that she could not offer emotional support in a new environment, refused relocate once again. She remained in Westport with the three children.[7]
This couple grew apart. Eventually the plaintiff became re-acquainted with his former fiancee and high school love, Eva. He wrote to the defendant, indicating that he could no longer tolerate her depression. There was no hope of reconciliation. Due to his absence from this country, the plaintiff lost his permanent resident alien status. He and Eva currently reside. in London.
The defendant's fragile mental health contributed to the deterioration of this marriage. She claims the plaintiff failed to support her, referring to an incident in 1992 wherein the plaintiff was not available upon her discharge from a psychiatric facility. Instead, he was on a ski trip with their children. During this same time period of time, the defendant was emotionally attached to the husband of a close family friend. That gentleman loved the defendant. He asked her to marry him. The plaintiff was aware of this relationship. Although the defendant CT Page 9859 insists that the relationship was platonic only, she did threaten to divorce the plaintiff.
Circumstances were such that these parties no longer functioned as a unit. Both parties bear equal responsibility for the deterioration of this marriage.
There are three Grabo children. Joachim, born July 24, 1981, will begin his final year at Lehigh College where he has studied engineering. Helena, born November 22, 1983, will enter her freshman year at Hamilton College this fall. Christine, the youngest child born July 4, 1988, will be a freshman at Guilford High School. Due to the expenses related to international travel, the plaintiff cannot see the children regularly, although he did visit on five occasions in the year 2001.[8] He does not call often, claiming that telephone contact is too expensive. He does, however, stay in touch through written correspondence and e-mail.
The plaintiff has always maintained savings accounts for the children. Joachim's college expenses depleted that child's savings account. The other two children still have individual savings accounts. Christine's account is somewhat larger inasmuch as it contains a $100,000 settlement that she received from litigation that arose after a motor vehicle accident
Both parties received property from their families during the course of this marriage. In 1987 the defendant's father gave her his summerhouse in Maro, Sweden, a tiny island in the Swedish archipelagos. The plaintiff owns the boat that the family used to access the property. The defendant has paid to maintain that boat. The house has an approximate value of $130,000.[9]
The defendant's father died in January of this year, leaving the defendant his sole heir. That estate included a house in Stockholm. Once renovated, the home would be suitable rental property. The property has a value of approximately $150,000. She also received a $150,000 inheritance, money that she has kept in a Swedish account in order to pay expenses associated with the property she inherited.[10]
The plaintiff also has inherited property, in his case a partial interest in a family farm located 200 miles south of Stockholm. The property's rental income barely covers the maintenance expenses. Nevertheless, the land, a tangible asset, does have some monetary value.
When in the United States, these parties purchased a home in Westport. That property was sold on June 30, 2002. At the time of the sale, there was over $700,000 in equity in that property. Upon the sale of that CT Page 9860 house, the defendant intended to move to Guilford.[11] The Westport home was modestly furnished. At the time of these proceedings, the plaintiff still had personal possessions in that home.[12]
When the plaintiff left his job in New York City and moved to Switzerland, he placed his entire bonus in a Merrill Lynch account in the defendant's name. The defendant used the entire $150,000 to supplement the funds she received from the plaintiff.
Having invested conservatively yet prudently, the parties have several joint savings. Additionally, the plaintiff maintains accounts for his children under the Uniform Gift to Minors Act. Neither party has a significant pension plan.[13]
The only other significant marital asset is an apartment the plaintiff maintains in Paris while he is working in London. Because he intends to return to Paris when his London position terminates, the plaintiff has not sold or rented that apartment. Although it is expensive at the present time to maintain two separate residences, by paying the current charges and keeping his Paris apartment, the plaintiff will eventually save money.
III. Orders
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981). The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The parties shall have joint legal custody of the minor child, Christine, born July 4, 1988. The primary residence of the child shall be with the defendant. The plaintiff shall have reasonable, flexible and liberal rights of visitation. He shall have the option of having the child on three separate weeks of uninterrupted time during the summer school vacation and will notify the defendant in writing by March 31st of the weeks that he intends to exercise that access. The plaintiff shall bear all costs associated with visitation.
3. The plaintiff shall provide to or for the benefit of the defendant and the minor child such medical and dental insurance as may be available through his employment, and the defendant shall reimburse the plaintiff for one-half of the cost thereof. The parties shall each be responsible CT Page 9861 for one-half of the cost of any uncovered or unreimbursed medical, dental, psychological or therapy expenses as may be reasonably necessary to or for the benefit of the minor child. Any unreimbursed medical, dental, psychological or therapy expenses incurred on behalf of the minor child shall be shared equally by the parties.
4. The plaintiff shall pay to the defendant unallocated alimony and child support in the amount of seven thousand dollars ($7,000) per month. The alimony award shall terminate upon the happening of any of the following events, whichever first occurs: (a) the defendant's death; (b) the defendant's remarriage; (c) in the discretion of the court pursuant to Connecticut General Statutes section 46b-86 (b), or the defendant's cohabitation. This amount shall be adjusted after July 4, 2006, the minor child's eighteenth birthday. For each year that the plaintiff has this obligation, he shall provide a copy of his tax return, or its European equivalent, no later than July 1st of each year.
5. An immediate wage execution shall enter.
6. For tax purposes the plaintiff may claim Christine as a dependent.
7. The marital home located in Westport, Connecticut, has been sold. After payment of the mortgage, broker's fee, attorney's fee and any other usual and customary closing expenses, the defendant shall receive the net proceeds. She shall be responsible for any taxable gain.
8. All of the furniture and furnishings in the marital home, with the exception of the plaintiff's personal papers and effects, is awarded to the defendant. Additionally, the parties shall equally divide the family memorabilia. The defendant shall arrange for the return of the plaintiff's possessions.
9. The plaintiff is awarded the apartment in Paris and the farm in Sweden.
10. The defendant is awarded the summerhouse in Maro and the house in Stockholm.
11. The defendant is awarded sole interest in the inheritance, savings accounts, stocks, personal property and individual retirement accounts listed on her financial affidavit.
12. The plaintiff is awarded sole interest in the motor vehicle, sailboat, personal property, and the Credit du Nord, Skandinaviska, Dresdener and Nat West bank accounts listed on his financial affidavit. CT Page 9862
13. The plaintiff is awarded sole interest in the following Merrill Lynch accounts listed on his financial affidavit: account number 874-72162; account number 874-72186; account number 874-48166; account number 154-15752; account number 154-15755.
14. The parties shall share equally the remaining Merrill Lynch account reflected on the plaintiff's financial affidavit: account number 154-15756.
15. The parties shall prepare, and be equally responsible for, presenting this court with a plan to effectuate this transfer
16. The plaintiff shall pay the defendant the sum of $30,000, the arrearage in his pendente lite alimony and child support payments.
17. Each party shall be responsible for his/her own attorney's fees.
18. For as long as the plaintiff shall have an alimony or support obligation, he shall cause to have in force and effect a life insurance policy on his own life in the sum of at least $500,000, naming the defendant as the beneficiary thereof as and for trustee for the minor child. The plaintiff shall provide to the defendant satisfactory evidence thereof within thirty (30) days and at such other times as may be reasonably requested by the defendant.
19. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
20. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on his/her respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on his/her financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
_________________ DEWEY, J.